WATKINS, Judge.
This is an action brought by Hammond Motors, Inc., against Joe Glass for the costs and expenses of replacing the engine of a 1977 Ford F-150 pickup truck owned by Glass, and which Glass had purchased from Hammond Motors. Glass filed a reconven-tional demand against Hammond Motors and a third party demand against Ford Motor Co. seeking rescission of the sale and return of the purchase price for breach of an express and implied warranty with respect to the engine. The trial court rendered judgment in favor of Hammond Motors and against Glass in the sum of $1,469.38, with interest and 25% attorney’s fees, and in favor of Glass and against Ford for the same amount, interest at the same rate, and identical attorney’s fees. Ford Motor Co. has appealed. Glass has neither appealed nor answered the appeal, nor has Hammond Motors appealed. We affirm the judgment of the trial court.
On or about June 10, 1977, Glass bought the four-wheel drive Ford pickup truck from Hammond Motors. He used it for about three months, and then returned it to the dealer, complaining that the engine was “smoking”. About a month before the date on which Glass brought the truck back to the dealer, he had had the air cleaner element replaced. The dealer determined when the truck was brought in because the engine was “smoking” that the engine had been damaged beyond repair by dust, mud, *344 and sand that had entered the engine, and replaced the engine. The truck had been driven only 5,063 miles at the time the truck was returned and the engine replaced. Ford refused to honor the warranty, and the dealer demanded payment from Glass for the installation of the replacement engine. Thus, the present suit arose.
It appears to be conceded by Ford that the engine was in warranty, but Ford contends that Glass breached the purchaser’s obligation by abusing or misusing the truck. Peter Held, an expert witness for Ford, testified that the outside of the engine was covered with dirt and grime, and that the engine had been damaged by dust and sand ingested into the engine as a result of failure to replace the air filter, which had been replaced only once, about a month, Glass testified, before he returned the truck to the dealer. The owner’s manual in one of several tables headed “General Warranty and Maintenance”, the table in question appearing on page 115, indicates that the carburetor air cleaner element is to be replaced every 30 months or 30,000 miles. Beside the listing are the numbers “5” and “6”. If we turn to page 117 of the owner’s manual, we see that Note 5 reads “More often if operated in severe dust conditions”. We find that Glass did not breach this requirement, as he replaced the air filter after the truck had been driven only approximately two months and certainly less than 5,000 miles, although, considering the deposit of sand, dirt and grime found on the engine, we feel the truck was driven in severe dust conditions. We cannot find, however, that failure to replace the filter before the time when it was replaced constituted a breach of the instructions somewhat unclearly set forth in the owner’s manual, but rather, we find the replacement constituted an attempt by the owner to follow the instructions.
Ford contends, however, that the replacement filter was of the wrong size, and that the improper size of the filter caused the damage to the engine. The record indicates that a filter of the wrong size was installed, as it was of the wrong diameter, and prevented a proper seal from being formed in the filter chamber. However, Ford’s expert witness, Peter Held, testified merely that the improper size of the replacement filter “could have been one factor ... ” in permitting dirt to enter the engine. We cannot say that the assertion is sufficient basis to find that the installation of the wrong filter was the precipitating factor in the ruin of the engine.
The trial court found that Glass had not violated the purchaser’s obligation under the warranty through any abuse or misuse of the truck. The truck was a 4-wheel drive truck, built for use off the highway in rugged terrain. In view of the type of use that such a vehicle is designed to perform and the evidence as a whole with respect to its use, we find no error on the part of the trial court in this regard. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The manufacturer and the dealer may be held in solido for return or diminution of the sale price if the manufacturer or dealer breached an express or implied warranty with regard to the sale of a motor vehicle. Savoie v. Don Siebarth Pontiac, Inc., 345 So.2d 210 (La.App.3d Cir. 1977). Although it would appear that the trial court should have held Hammond Motors liable in solido with Ford, Glass did not appeal the judgment dismissing his recon-ventional demand against Hammond Motors, and Ford, as a debtor in solido, may be held for the whole of the debt. LSA-C.C. arts. 2091, 2094.
Accordingly, the judgment of the trial court is affirmed, all costs to be borne by Ford Motor Co.
AFFIRMED.